(63 Misc. Rep. 174.)

## In re KARRER'S WILL.

(Surrogate's Court, Kings County.    April, 1909.)

WILLS (§§ 118, 123*)—EXECUTION—SUFFICIENCY OF ATTESTATION.

When the signatures of testator and witnesses were subscribed to an instrument, it was not properly executed as a will; but thereafter testator acknowledged his signature, declared his will, and requested the witnesses to again attest the same, whereupon they adopted their previous signatures as an attestation of the last transaction. *Held*, that the will was duly signed as required by statute.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 302–304, 321–331; Dec. Dig. §§ 118, 123.*]

In the matter of the last will of Margaret Karrer, deceased. Proceeding for probate of will. Probate decreed.

Isaac Sargent (Henry Parsons, of counsel), for petitioner.
O'Neil & O'Neil, for contestant.

KETCHAM, S. The paper offered for probate was signed by the testatrix and by the witnesses with such copious disregard of the statutory requirements that its invalidity would have to be confessed, were it not that, immediately thereafter and upon a separate occasion, the witnesses were brought into the presence of the testatrix, and the testatrix acknowledged her subscription thereto in the presence of each of the attesting witnesses, declared the instrument to be her last will and testament, and requested the witnesses to attest her act; and the witnesses, with the knowledge of the testatrix, reaffirmed their previous signatures without further writing. Upon this second attempt nothing was wanting to a complete transaction, unless it be that the witnesses did not then write their names anew.

There is no suspicion of unfairness, restraint, or mental incapacity, and the sole question is whether or not there was a fair compliance with the statute requiring that each witness "shall sign his name as a witness at the end of the will at the request of the testator."

In Matter of Stickney's Will, 31 App. Div. 382, 52 N. Y. Supp. 929, Mr. Justice Follett, in rejecting the claim that a will, once revoked, had been republished by its acknowledgment to persons who were not the original witnesses, and who did not then subscribe as witnesses to the republication, used the following words, which, however they might have illustrated his argument, were not essential to the decision:

"If it [the will] is republished in the presence of the original subscribing witnesses, it may not be necessary for them to subscribe the will anew as witnesses, for the rewriting of their signatures would seem to be a useless formality; but the mere acknowledgment or publication by a testator of a will which has been revoked to persons who were not the original subscribing witnesses, and who do not then subscribe as witnesses the republished will, is not a compliance with the fifty-third section of the statute." 2 Rev. St. (1st Ed.) p. 66, pt. 2, c. 6, tit. 1, art. 3; 2 Rev. St. (9th Ed.) p. 1880.

In Vaughan v. Burford, 3 Bradf. Sur. 78, the will was drawn pursuant to the instructions of a testator who was ill of cholera. Thereupon, in a room apart from the testator, the draftsman signed the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

name of the testator, and he and another signed their names as witnesses. Thereafter, the testator and the witnesses all present, the paper was read to the testator, including the names of the witnesses signed to it, and he was told that the draftsman had signed his name. He said that he could write his own name. His name, already written, was erased, and he wrote his own name. Mr. Surrogate Bradford says:

"The names of the witnesses were read in connection with the other portion of the paper, and he must have seen them when he signed it. These circumstances seem to me to satisfy the statute in spirit and substance. The witnesses may be said to have signed at the decedent's request, when, their names having been read over to him and seen by him, he set his own signature to the document. * * * We have in the evidence before us the most unequivocal testimony that the attestation was with his consent and full approbation, and that the nature of the transaction was well understood by everybody present. The intention of the decedent was most clear; that he desired to carry it out was manifested by the act of signing after the reading of the paper, by which act he ratified and confirmed all that had been done, making, as it were, the acts of others, so far as his request was necessary, receive an ex post facto confirmation."

In Matter of Stewart's Will, 2 Redf. Sur. 77, the question arose whether there was a request to the witnesses before they signed. There was no express request. The court says:

"I am further of the opinion that the reading of the attestation clause signed by the witnesses, stating that they subscribed by request of the testator in his presence, without objection from him, may be regarded as an adoption of a request to that effect, though, subsequent to the signing by them. This view is not opposed to Jackson v. Jackson, 39 N. Y. 153."

Clearly the same rule by which a request, made after the subscription by the witnesses, may relate back to a moment before the actual subscription, will require that, under the same circumstances, the publication as well as the request may be regarded as having accompanied or preceded the signing by the witnesses.

In Jackson v. Jackson, 39 N. Y. 153, it was held that probate should be denied where the witnesses signed before the testator's act of signature; but in that case there were no words of publication, acknowledgment of the testator's signature, or request to the witnesses, after the testator had subscribed the instrument. Upon the facts there apparent the case determines nothing except that a will is not properly solemnized when the signatures of the witnesses, which were made at the request of the testator, but before his own subscription, are followed by his own subscription without any renewal of his publication or request. As appears from the language of the opinion quoted infra, the decision rests upon the absence of any publication or request after the paper was subscribed, as well as the lack of any proof that the witnesses by their signatures attested an act which had not been done when their names were written. The court says of the witnesses:

"They are, in and by this act of signing their names, to attest, not only the signing or acknowledgment, but his cotemporaneous declaration that it is his will. Their signatures do not attest the signing by the testator, if they are placed there before the will is signed by him. For some period, longer or shorter, as the case may be, those signatures attest no execution—they certify what is not true. When, and in what moment, do they begin to operate as a

compliance with the statute? The only reply that can be given is: When the testator signs his name. This is a dangerous construction of the statute. May the testator keep these signatures in his possession one hour, one week, or one year, and then add his signature? Certainly not, unless he summons the same persons to see him sign, or hear his acknowledgment thereof."

From the last sentence quoted, it is obvious that, in the personal opinion of the judge who wrote, the result would have been otherwise, if, after the signatures of the testator and the witnesses, there had been a further publication and request followed by the adoption of the witnesses' former signatures both by themselves and the testator.

The evidence in the case at bar does not permit a finding that these two attempts at will making constituted a single occasion, for there was a distinct break in the transaction between the original signing of the will and the final effort to cure the deficiencies which first existed; nor is the probate ended by the decisions that the acts prescribed by the statute of wills need not always be done in the order usually and properly observed. If the witnesses did not sign their names after the testatrix had signed and after her publication and request were made in their presence, then they did not ever sign as witnesses for the purposes of the statute, for the only request and the only attestation of which the circumstances permit, and in fact the only observance of any kind which took place in the presence of both witnesses, must have come to pass after the acknowledgment by the testatrix and her subscription formerly made.

The cases cited indicate that, where the signatures of the testator and of the witnesses all appear upon an instrument which has not yet been properly executed and attested, the witnesses may be said to have signed as such for the purposes of the statute if, as a new transaction, the testator acknowledges his signature, declares his will, and requests the witnesses to attest the same, and the witnesses thereupon, to the knowledge of the testator, accede to his request and adopt their previous signatures as an attestation of the transaction.

The law in its zeal for probate could not go much further, but authority justifies the admission of this will. It will be decreed accordingly.

Probate decreed.

(63 Misc. Rep. 169.)

### In re ABEL'S WILL.

(Surrogate's Court, Kings County. April, 1909.)

1. WILLS (§ 304*)—PROBATE—PROOF OF HANDWRITING.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 724–728; Dec. Dig. § 304.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes